IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:14-cr-00019-06 |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| v. | |
| SCOTT ANDREW ANDERSON, | |
| Defendant. | |

The United States of America, by Mac Schneider, United States Attorney for the District of North Dakota, and Brett M. Shasky, Assistant United States Attorney, submits this response to Defendant Scott Andrew Anderson's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), asserting extraordinary and compelling reasons for a sentence reduction.

In his Motion, Anderson argues that his "unusually long sentence" presents compassionate release grounds based upon changes in the First Step Act, which made a non-retroactive change to the penalties under 21 U.S.C. § 841 and § 851. However, this provision as applied to the First Step Act's modification of § 841 and § 851 conflicts with the will of Congress that the First Step Act was non-retroactive and therefore cannot be considered in determining Anderson's eligibility for compassionate release.

## I.    Procedural History

On March 26, 2014, a federal grand jury returned an Indictment charging Defendant and others with Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances; specifically, more than 500 grams of methamphetamine, in

violation of 21 U.S.C. §§ 841(a)(1) and 846. On April 9, 2014, the United States filed an Information pursuant to 21 U.S.C. § 851(a)(1), alleging Defendant's prior felony convictions: (1) 2002 Controlled Substance Crime in the Fifth Degree—Possession of Methamphetamine in Ramsey County District Court, Minnesota, and (2) 2006 Controlled Substance Crime in the Third Degree in a Park—Possession of Methamphetamine in Wilkin County District Court, Minnesota. These prior convictions increased Defendant's minimum term of imprisonment on Count One from ten years to life imprisonment.

On September 2, 2014, Defendant pled guilty to the Indictment pursuant to a Plea Agreement wherein the United States agreed to file a motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 in the event Defendant provided substantial assistance to the United States. At sentencing the United States moved to withdraw the 2002 prior conviction above thereby reducing the minimum mandatory for Defendant to 20 years rather than life. Pursuant to the plea agreement and plea agreement supplement (Docs. 200 and 201), Defendant was sentenced on January 6, 2015, to a term of 25 years' imprisonment, followed by 10 years of supervised release. (Docs. 327 and 328.)

Defendant directly appealed his conviction and sentence. On appeal, Anderson argued that the government breached its written plea agreement by refusing to move for a downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) at sentencing. The Eighth Circuit disagreed, affirming the conviction and sentence. United States v. Scott Andrew Anderson, No. 15-1182, Entry ID 4296584 (8th Cir. June 30, 2015).

On July 10, 2015, Defendant filed a motion under 18 U.S.C. § 3582 and Amendment 782 to the Sentencing Guidelines, commonly known as the "Drug minus 2"

amendment, asserting his guideline should be reduced by two levels pursuant to the Amendment. (Docs. 350 and 364.) The Court denied the motion as Defendant was not eligible for relief under Amendment 782. (Doc. 365.) Defendant now files the instant motion under 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release, primarily under the "unusually long sentence" provision set forth at U.S.S.G. § 1B1.13(b)(6). (Doc. 417.)

## II.    Anderson is Not Eligible For A Sentence Reduction Under USSG § 1B1.13.

Anderson seeks a sentence reduction under USSG § 1B1.13(b)(6), the "unusually long sentence" provision. He argues that he is entitled to a sentence reduction based on changes made by the First Step Act, which reduced the mandatory minimum penalties triggered by an § 851 notice, applicable to offenders with one or more convictions for a predicate offense. Alternatively, he seems to argue that he is entitled to a sentence reduction under USSG § 1B1.13(b)(1), the medical circumstances provision, or § 1B1.13(b)(2), the age provision. Neither subsection (b)(1) nor (b)(3) affords Anderson any relief.

     a.  *USSG § 1B1.13(b)(6)*

       i.  <u>History</u>

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. <u>See</u> Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

> the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all*

> *administrative rights to appeal a failure of the Bureau of Prisons to bring
> a motion on the defendant's behalf or the lapse of 30 days from the receipt
> of such a request by the warden of the defendant's facility, whichever is
> earlier*, may reduce the term of imprisonment . . . , after considering the
> factors set forth in section 3553(a) to the extent that they are applicable,
> if it finds that . . . extraordinary and compelling reasons warrant such a
> reduction . . . and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members and remained without a quorum for more than three years. See 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. See United States v. Ruvalcaba, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). But see United States v. Bryant, 996 F.3d 1243, 1262 (11th Cir. 2021). As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits to consider the question—including this circuit—determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. See United States v. Andrews, 12 F.4th 255, 261 (3d Cir. 2021); United States v. McCall, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); United States v.

Thacker, 4 F.4th 569, 571 (7th Cir. 2021); United States v. Crandall, 25 F.4th 582, 585–

86 (8th Cir. 2022); United States v. Jenkins, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022);

see also United States v. McMaryion, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir.

June 22, 2023) (per curiam) (unpublished). Four circuits, in contrast, have taken the view

that a change in the law can form part of an individualized assessment of whether to grant

a sentence reduction, but only in combination with other case-specific factors. Ruvalcaba,

26 F.4th at 28; United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020); United States

v. Chen, 48 F.4th 1092, 1097–98 (9th Cir. 2022); United States v. McGee, 992 F.3d

1035, 1047–48 (10th Cir. 2021).

In 2022, the Sentencing Commission regained a quorum, and after public notice

and comment, voted on April 5, 2023, to promulgate amendments to the Guidelines

Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254–

28,281 (May 3, 2023); see also Sentencing Commission Public Meeting Tr. 27–82 (Apr.

5, 2023) ("4/5/23 Tr.").[1] The amendments to Section 1B1.13 render the policy statement

applicable to defendant-filed motions. As relevant here, the amendments also purport to

allow, with certain limitations, consideration of changes in law—including ones Congress

has chosen not to make retroactive—when determining whether a defendant has

presented an extraordinary and compelling reason for a sentence reduction. That change

is reflected in new subsections (b)(6) and (c), which provide:

---

[1] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; see U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. See 4/5/23 Tr. 81–82. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." Id. at 60 (Commissioner Wong, delivering joint statement). In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." Id. at 60–61. "The separation of powers problem" with

that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." Id. at 61.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; see 28 U.S.C. § 994(p).

ii. The Sentencing Commission Exceeded Its Congressionally-Delegated Authority In Promulgating Subsection (b)(6).

1. In Exercising Its Authority, The Commission Cannot Act Contrary To The Statute.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). However, "the Commission's authority to issue binding policy statements is not unlimited." United States v. Rutherford, 120 F.4th 360, 375–76 (3d Cir. 2024) (holding that subsection (b)(6) as applied to the First Step Act's modification of § 924(c) conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate release). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); see Batterton v. Francis, 432 U.S. 416, 428 (1977). An agency cannot adopt an impermissible reading of the statute—i.e., a reading

that exceeds the gap left by Congress. <u>See</u> <u>Mayo Found.</u>, 562 U.S. at 53–58; <u>Batterton</u>, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." <u>United States v. LaBonte</u>, 520 U.S. 751, 753, 757 (1997); <u>cf.</u> <u>Mistretta v. United States</u>, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." <u>Id.</u> § 995(a)(20) (emphasis added).

> ## 2. *Subsection (b)(6) Conflicts With Section 3582(c)(1)(A)'s Plain Text, Context, And Purpose—As The Eighth Circuit Has Held.*

a.       Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed'." <u>Dillon v. United States</u>, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly

when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The court of appeals has already held as much, determining that Section 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances. See Crandall, 25 F.4th at 585–86. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. Mayo Found., 562 U.S. at 58; see LaBonte, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

The Eighth Circuit has already construed Section 3582(c)(1)(A)(i) to preclude a change in law from qualifying as an extraordinary and compelling reason for a sentence reduction. The court did so, moreover, based on its construction of the statute's clear meaning. The Sentencing Commission's policy statement provides no basis to reconsider that determination.

In Crandall, the Eighth Circuit held that "a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)." 25 F.4th at 586. Because the court did not consider there to be a then-applicable policy statement, the court of appeals directly interpreted the statutory phrase "extraordinary and compelling" reasons. Id. at 583–85. And the Eighth Circuit's holding

was based on its conclusion that the statute's clear meaning excludes intervening

sentencing law from contributing to a showing of extraordinary and compelling reasons.

"[T]he Commission does not have the authority to amend the statute" or "to

override the statute as [the court of appeals] has construed it."[2] Neal, 516 U.S. at 290,

294; see United States v. Koons, 850 F.3d 973, 979 (8th Cir. 2017) (Sentencing

Commission cannot "overrule circuit precedent interpreting a *statutory* provision"

(quoting United States v. Williams, 808 F.3d 253, 266 (4th Cir. 2015) (Traxler, C.J.,

dissenting).)) The court of appeals' determination in Crandall remains binding in this

circuit. Nor does (or could) the Commission's policy statement provide a basis to

reconsider that precedent, because "a precedent holding a statute to be unambiguous

forecloses a contrary agency construction." Nat'l Cable & Telecomm. Ass'n v. Brand X

Internet Servs., 545 U.S. 967, 984 (2005); see Lechmere, Inc. v. NLRB, 502 U.S. 527,

536–37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that

determination under the doctrine of *stare decisis*, and we judge an agency's later

interpretation of the statute against our prior determination of the statute's meaning."

(internal quotation marks omitted)).

---

[2] Because the Eighth Circuit in Crandall did not suggest that Section 3582(c)(1)(A)(i)'s
text is ambiguous, it also is unnecessary for this Court to "decide what, if any, deference
[would be] owed the Commission in order to reject its alleged contrary interpretation."
Neal v. United States, 516 U.S. 284, 295 (1996); see also DePierre v. United States, 564
U.S. 70, 87 (2011) (explaining that the Supreme Court has not addressed what deference
is owed to the Commission's interpretations of a statute).

The Supreme Court has not hesitated to reject the Sentencing Commission's purported interpretation of a statute where inconsistent with plain statutory language—including language the Court had previously authoritatively construed. In Neal, for example, the Court held that Guidelines commentary addressing the method for calculating the weight of LSD did not alter the Court's interpretation of the phrase "a mixture or substance containing a detectable amount" of certain drugs as used in 21 U.S.C. § 841(b). Neal, 516 U.S. at 287–89 (describing Court's prior decision in Chapman v. United States, 500 U.S. 453 (1991)). Although the Court considered it "doubtful" the Commission intended to "displace" the Court's interpretation of Section 841(b), the Court nevertheless explained that if the commentary was intended to do so, the Commission's action "cannot be squared" with the Court's prior determination. Id. at 293–94. "Once we have determined a statute's meaning," the Court explained, "we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law." Id. at 295; see also LaBonte, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

The same result is warranted here. The court of appeals directly construed, as a statutory matter, the phrase "extraordinary and compelling" as used in Section 3582(c)(1)(A). The Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. Neal, 516 U.S. at 290, 294.

b.  This circuit's precedent, in any event, is correct. To justify a sentence

reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary"

and "compelling." As a matter of plain language, an intervening change in the law is

neither.

The First Step Act of 2018

Congress's decision not to apply a statutory change in sentencing law

retroactively, in particular, is neither extraordinary nor compelling. Consistent with the

"'fundamental canon of statutory construction' that words generally should be

'interpreted as taking their ordinary, contemporary, common meaning . . . at the time

Congress enacted the statute'," Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067,

2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,'

'far from common,' and 'having little or no precedent'," McCall, 56 F.4th at 1055

(quoting Webster's Third New International Dictionary of the English Language 807

(1971) (Webster's)). Far from being unusual, uncommon, or unprecedented, a

defendant's lawfully imposed sentence simply reflects the law at the time he was

sentenced.

In the First Step Act, Congress amended Section 924(c) to eliminate stacking

penalties for violations charged in the same indictment and Section 841(b) to require

prior convictions for a serious drug or serious violent felony to enhance the mandatory

minimum sentence. In Sections 401(c) and 403(b) of the Act, however, Congress made

the deliberate choice not to make that amendment applicable to defendants who had been

sentenced before the Act's enactment, specifying that the change would apply only "if a

sentence for the offense has not been imposed as of such date of enactment." First Step

12

Act § 401(c), 132 Stat. 5221, and § 403(b), 132 Stat. 5222. In so doing, Congress adhered

to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to

defendants not yet sentenced, while withholding that change from defendants already

sentenced." Dorsey v. United States, 567 U.S. 260, 280 (2012); cf. 1 U.S.C. § 109

(general nonretroactivity provision).

      The Third Circuit recently ruled that the Sentencing Commission lacked the

authority to enact subsection (b)(6) because it went beyond what Congress intended.

Rutherford, 120 F.4th at 376. The court agreed with the government "that subsection

(b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of

§ 924(c), conflicts with the will of Congress and thus cannot be considered in

determining a prisoner's eligibility for compassionate release." Id. The same holds true

for the First Step Act's modifications to § 851. Allowing the change to § 851 to be

considered for compassionate release eligibility is not consistent with the specific

directives that Congress set forth in the First Step Act that the penalties were non-

retractive.

      Given Congress's deliberate choice not to make the First Step Act's changes to

Sections 924(c) and Section 841(b) applicable to defendants who had already been

sentenced, "there is nothing 'extraordinary' about" the fact that Anderson's sentence

reflects the statutory penalty that existed at the time he was sentenced. Thacker, 4 F.4th at

574. That sentence "was not only permissible but statutorily required at the time." United

States v. Maumau, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring).

And when Congress enacted the First Step Act, it specifically declined to disturb

Anderson's sentence for his Section 841 conviction, even as it made other (previous) statutory changes applicable to defendants previously sentenced. In Section 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases. Section 404 authorizes a sentencing court to "impose a reduced sentence as if [those provisions] of the Fair Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb Section 924(c) and Section 841 sentences that had already been imposed notwithstanding the different penalties that Sections 401 and 403 would require courts to apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. See Rutherford, 120 F.4th at 378 ("Congress has already taken retroactivity off the table, so we cannot consider it.") As the Third Circuit recognized: "the duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance because there is nothing extraordinary about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." Id. at 370–71 (internal quotations and citations omitted). Moreover, considering the length of a sentence that Congress mandated as a reason for a sentence reduction would infringe on Congress's authority to set penalties. Id. at 371.

14

When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." McCall, 56 F.4th at 1055 (quoting Webster's 463). Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. Id. (internal quotation marks omitted). Even beyond the First Step Act's explicit determination not to apply the amendment to Sections 924(c) and 841(b) retroactively, ordinary principles of nonretroactivity already consider, and reject, the notion that changes in statutory law generally should be applied retrospectively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act . . . so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic'." Jenkins, 50 F.4th at 1198 (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between Anderson's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's change to Sections 924(c) and Section 841(b) applicable to defendants who had already been sentenced. As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new

15

law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." <u>Dorsey</u>, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, <u>id.</u>, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction, <u>Andrews</u>, 12 F.4th at 261.

Case Law Changes

Likewise, when a change in the law is not retroactively applicable to a sentence that is already final, nothing is "extraordinary" about that final sentence reflecting prevailing law at the time when it was imposed. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute'," <u>Wisconsin Central Ltd.</u>, 138 S. Ct. at 2074, the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent'," <u>McCall</u>, 56 F.4th at 1055 (quoting Webster's 807). Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced. And any potential disparity between his sentence and the sentence he might receive today merely reflects the operation of ordinary nonretroactivity principles.

A nonretroactive change in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." <u>McCall</u>, 56 F.4th at 1055 (quoting Webster's 463). Thus, for a reason to be

16

"compelling" under Section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. Id. (internal quotation marks omitted). Ordinary principles of nonretroactivity, however, already consider, and reject, the notion that all changes in the law should be allowed to disturb final convictions and sentences. The very point of the doctrine is to identify the small subclass of changes in the law that should be applied retroactively. To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Accordingly, nonretroactive changes in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, a nonretroactive change in sentencing law is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. Jenkins, 50 F.4th at 1202 (internal quotation marks omitted); see United States v. Jarvis, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

c.    Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law. Beyond specifying that "[r]ehabilitation of the defendant alone shall not be considered an

extraordinary and compelling reason," 28 U.S.C. § 994(t), Congress placed no textual

limit on the reasons that might warrant a sentence reduction. That contention disregards

Congress's express textual requirement that any reason for a sentence reduction be both

"extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A)(i). As explained, an

intervening change is neither under those terms' ordinary meaning, and by using that

phrase Congress did place clear textual limits on the reasons the Commission could

validly identify as warranting a sentence reduction.

"Statutory construction," moreover, "is a holistic endeavor" and a provision "is

often clarified by the remainder of the statutory scheme." United Sav. Ass'n of Tex. v.

Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988). Other features of the

scheme confirm that the phrase "extraordinary and compelling reasons" does not

encompass changes in law.

Most notably, in the very next paragraph of Section 3582(c), Congress expressly

addressed the retroactive application of some changes in law. In Section 3582(c)(2),

Congress authorized courts to modify a term of imprisonment where a defendant was

sentenced "based on a sentencing range that has subsequently been lowered by the

Sentencing Commission." 18 U.S.C. § 3582(c)(2); see 28 U.S.C. § 994(u) (directing the

Commission to determine when such modifications are appropriate). There would have

been no reason for "the same Congress, skeptical of sentence modifications as a general

rule," to have "provide[d] for the retroactive application of specific changes in sentencing

law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal

developments, retroactive or not." McCall, 56 F.4th at 1056. That Congress did not

18

similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." Jones v. Hendrix, 599 U.S. 465, 473 (2023); see Thacker, 4 F.4th at 574. (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." Crandall, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." Preiser v. Rodriguez, 411 U.S. 475, 489–90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." McCall, 56 F.4th at 1057–58 (internal quotation marks omitted).

d.    Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under Section 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted.

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." Mistretta, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); see also Neal, 516 U.S. at 290–91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." Tapia v. United States, 564 U.S. 319, 325 (2011).

Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate

20

Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. Id. at 55–56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," Jenkins, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," Crandall, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." See 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." Senate Report at 55. The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose. In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example. Id. Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood Section 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances." Id. The passage does not suggest that Section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions. See 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239. But nothing about the First Step Act's procedural amendment to Section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of

22

the provision "suggests Congress intended to change th[e] *substantive* status quo with a process-oriented amendment." McCall, 56 F.4th at 1060 (emphasis added). Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which prevented the BOP from bringing Section 3582(c)(1)(A) motions on behalf of some defendants who satisfied longstanding criteria for relief.[3] Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling. Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence. See Jenkins, 50 F.4th at 1205–06. In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64–66 (Vice

---

[3] See Sentencing Guidelines App. C, Amend. 799 (noting evidence showing "inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility"); U.S. Dep't of Justice, Office of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 53 (2013) (finding that the "inconsistent and ad hoc implementation" of BOP's "compassionate release program" has "likely resulted in potentially eligible inmates not being considered for release").

Chair Murray, delivering joint statement); cf. Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

e.      Finally, the Commission's interpretation of Section 3582(c)(1)(A) as empowering district courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles.

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." Mistretta, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," id. at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," Gore v. United States, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." Mistretta, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the

24

Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular

Guidelines amendments that the Commission has elected to make retroactive. See

U.S.S.G. § 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an

amendment to the Guidelines Manual that has not been made retroactive" from qualifying

as an extraordinary and compelling reason for a sentence reduction. U.S.S.G.

§ 1B1.13(b)(6); see 88 Fed. Reg. at 28,259. The Commission accordingly precluded

courts from using compassionate release as an end-run around the Commission's own

determinations concerning the retroactive application of its Guidelines amendments. But

by permitting other changes in law, including a statutory change that *Congress* explicitly

declined to make retroactive, to qualify, the Commission declined to afford the same

respect to Congress's retroactivity determinations. That counterintuitive result cannot be

squared with the Commission's statutory authority. See, e.g., LaBonte, 520 U.S. at 757

(the Commission "must bow to the specific directives of Congress").

Indeed, the separation of powers concerns are particularly apparent with respect to

Defendant's invocation of Sections 401 and 403 of the First Step Act as grounds for a

reduction. In the same statute in which Congress amended Section 3582(c)(1)(A) to

permit defendants to directly file sentence-reduction motions, Congress made the

deliberate choice *not* to make Sections 401 and 403 applicable to a defendant who was

sentenced before the First Step Act's enactment. Congress specified that the change

would apply only "if a sentence for the offense has not been imposed as of such date of

enactment." First Step Act, § 401(c), 132 Stat. 5221, § 403(b), 132 Stat. 5222. Any

disparity between Defendant's sentence and the sentence he would receive today thus is

the product of deliberate congressional design, and there is no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach." United States v. Jarvis, 999 F.3d 442, 444 (6th Cir. 2021); see Andrews, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute.").

      ii.  Regardless, Anderson Cannot Establish That Changes In Law Produce A Grossly Disparate Sentence.

If subsection (b)(6) represents a valid exercise of the Commission's delegated authority, Anderson's guideline range would likely be as he notes, 121 to 151 months, as the minimum mandatory would sit at 120 months, rather than the 20-year minimum he faced in 2015, when he was sentenced. What he fails to note is that the 25-year sentence he received was 5 years over the minimum mandatory at the time. The reason for the additional 5 years was a compromise reached by the parties after pretrial release violations by Anderson caused the United States to elect not to file a substantial assistance motion. Instead, the United States agreed to withdraw one certified prior shifting the minimum mandatory from life imprisonment to 20 years' imprisonment. An additional amount of time over the minimum was included due to the release violations. Had it not been for the release violations, the United States would have anticipated making a recommendation of 20 years, and a likely sentence from the Court in the 17 to 18-year range. A sentence of 20 years as the United States would likely have

recommended at the time of sentencing in 2015 is not disparate from the sentence Anderson would likely have received today. See Section III below.

      iii.   <u>Anderson Is Not Eligible For Compassionate Release under USSG § 1B1.13(b)(1)—Medical Circumstances of the Defendant.</u>

Alternatively, Anderson argues, though not specifically citing the Guideline provision, that this Court should find him eligible for compassionate release under USSG § 1B1.13(b)(1)(B)(i) and (iii), which addresses medical circumstances of the defendant. Anderson claims significant medical issues and advancing age (he is currently 63 years of age) as extraordinary and compelling reasons for a sentence reduction. USSG § 1B1.13(b)(1)(B) authorizes courts to find extraordinary and compelling reasons under the following circumstances or a combination thereof:

    (B)  The defendant is—

        (i)      Suffering from a serious physical or medical condition,

        . . .

        (iii)    Experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Under Paragraph (b)(1)(B) a defendant may rely on one circumstance or a combination of circumstances. While Anderson has provided medical records showing he suffers from some medical issues, they have in large part been conditions existing since prior to his sentencing in 2015. They may be somewhat impacted by passage of time, but he makes no claim, nor does he provide support for the requirement that he is unable to

provide self-care in the correctional facility. In fact, he appears to be doing very well in the facility. It does not appear that the medical conditions of which he suffers are extraordinary and compelling on their own to grant relief.

The other factor mentioned by Anderson is his age. This argument would carry more weight under Paragraph 1B1.13(b)(2)—Age of the Defendant, in a few more years. That section provides for an extraordinary and compelling reason based upon age of the defendant if:

> The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Again, this does not appear to apply in Anderson's case. First, he has not yet attained the age of 65. Second, it does not appear that he is experiencing a serious deterioration in physical health, but rather the normal deterioration that comes with the aging process. The only portion he satisfies is the length of imprisonment he has served, which is approximately 10 years at this time. Hence, Anderson does not meet the qualifications under Paragraph 1B1.13(b)(2) to show extraordinary and compelling reasons.

Even looking at the combination of the medical circumstances and age of Anderson does not meet the level of extraordinary and compelling reasons required for a reduction in his sentence and his motion should be denied. Because he does not meet the extraordinary and compelling threshold, it is unnecessary to take the next step and address the § 3553(a) factors in any detail.

III.    **Alternatively, A Sentence At The Middle Of The Now Applicable Guideline Range Of 360-Life is Warranted**

The United States opposes Anderson's motion for a sentence reduction. But assuming arguendo this Court finds him eligible under USSG § 1B1.13 and grants his request for a reduced sentence, the United States takes the position that a sentence of 17 years would be sufficient, as it would be an equal amount above his Guideline range were he to be sentenced today, as his original sentence was above the Guideline range. His original Guideline range was 121 to 151 months, but the 20-year minimum mandatory became the guideline. His sentence was then 5 years over that guideline at 25 years or 300 months. If sentenced today, the Guideline range would be 121 to 151 months. Adding the 5 years as with his original sentence would make the range 181 to 211 months. A sentence of 17 years would be 204 months. Although it is within the Court's discretion to determine an appropriate reduction, the United States recommends a sentence of 204 months would satisfy 18 U.S.C. § 3553(a)'s directive that the Court impose a sentence that is sufficient but not greater than necessary, in the event Anderson qualifies for a reduction.

IV.    **Conclusion**

For the reasons stated above, the United States respectfully asks the Court to deny Anderson's motion.

Dated:  December 18, 2024

MAC SCHNEIDER
United States Attorney

By:    */s/ Brett M. Shasky*
BRETT M. SHASKY
Assistant United States Attorney
ND Bar ID 04711
655 First Avenue North, Suite 250
Fargo, ND  58102-4932
(701) 297-7400
brett.shasky@usdoj.gov
Attorney for United States

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, the above-named document was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing.

I further certify that a copy of the foregoing documents will be mailed by first class mail, postage paid, to the following non-ECF participant(s):

Scott Andrew Anderson
Reg. No. 13125-059
FCI Sandstone
P.O. Box 1000
Sandstone, MN  55072

Dated:  December 18 2024

/s/ Julie Spotts
Julie Spotts
Office of the United States Attorney